IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ERIC SPRANG, | : | CIVIL ACTION NO. |
| | : | 1:16-CV-3460-ODE-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, Acting | : | **FINAL REPORT AND** |
| Commissioner of Social Security, | : | **RECOMMENDATION ON AN** |
| | : | **APPEAL FROM A SOCIAL** |
| Defendant. | : | **SECURITY DISABILITY ACTION** |

Plaintiff Eric Sprang ("Plaintiff" or "Claimant") is a 31-year-old male seeking Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"),[1] which issued a partially favorable decision, denying Plaintiff's claim for benefits prior to January 1, 2013, but finding that Plaintiff became disabled on that date. Plaintiff alleges disability and entitlement to benefits on the basis of the severe

---

[1] Because Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration, pursuant to Rule 25 of the Federal Rules of Civil Procedure, she is automatically substituted as the Defendant in lieu of former Commissioner Carolyn W. Colvin. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g). The Clerk is **DIRECTED** to update the docket to reflect that Nancy A. Berryhill is the Defendant.

impairments of Crohn's disease, anxiety, depression, personality disorder, history of substance abuse and kidney stones.

Plaintiff filed an application for DIB and SSI on January 16, 2013, alleging an onset date of disability of December 1, 2000. Record (hereinafter "R.") at 250–57. Since then, Plaintiff amended the alleged onset date once, to June 1, 2011. R. at 275. After the Commissioner's staff initially denied the applications, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Jeffrey W. Kohlman held a hearing on November 10, 2014. R. at 76–109. On January 6, 2015, ALJ Kohlman found that Plaintiff has "was not disabled " as defined by the Act "prior to January 1, 2013, but became disabled on that date and has continued to be disabled" through the date of the decision. R. at 65. On May 25, 2016, the Appeals Council of the Social Security Administration denied Plaintiff's Request for Review, making the ALJ's decision final. R. at 8–14. Plaintiff then filed this action on September 15, 2016. It is now before the undersigned and is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, based on the administrative record and the briefs of the parties, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **REVERSED and REMANDED**.

2

**I.      STANDARD FOR DETERMINING DISABILITY**

An individual is "disabled" for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Any impairments must result from anatomical, psychological, or physiological abnormalities demonstrated by medically accepted clinical or laboratory diagnostic techniques, and must prevent the claimant from substantial gainful work. 42 U.S.C. §§ 423(d)(2)–(3).

Claimant and the Commissioner share the burden of proof. Claimant bears the initial burden of establishing a "disability" by demonstrating that he cannot perform his former type of work. Once Claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience and impairment, the claimant can perform other jobs. Claimant bears the ultimate burden to prove that he cannot engage in any substantial gainful activity. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The Commissioner must use a five-step sequential analysis:

(1)     Is Claimant currently working? If so, the claim is denied.

(2)     Is the claimed impairment severe; that is, does the impairment or combination of impairments significantly limit the individual's physical or mental ability to do basic work activities? If not, the claim is denied.

(3)     Does the impairment equal or exceed in severity certain impairments described in the impairment listings in the regulations? If so, Claimant is automatically entitled to disability benefits.

(4)     Does Claimant have sufficient residual functional capacity to perform past work? If so, the claim is denied.

(5)     Considering Claimant's age, education, work experience, and residual functional capacity, can Claimant perform any other gainful and substantial work? If so, the claim is denied.

*See* 20 C.F.R. §§ 404.1520–404.1576.

In this case, the Commissioner, adopting the findings of the ALJ, made the decision to deny deny disability benefits at Step 5, finding that, although the Claimant has no past relevant work, prior to January 1, 2013, he retained the residual functional capacity that allowed him to perform certain light jobs that were available in significant numbers in the nationwide economy.

## II.    FINDINGS OF THE ALJ

The ALJ made the following findings of fact ("FOF"):

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

(2) The claimant has not engaged in substantial gainful activity since the amended alleged onset date of June 1, 2011.

(3) Since the amended alleged onset date of disability, June 1, 2011, the claimant has had the following severe impairments: Crohn's disease, anxiety, depression, personality disorder, history of substance abuse and kidney stones.

(4) Since the amended alleged onset date of disability of June 1, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

(5) After careful consideration of the entire record, the undersigned finds that from the amended alleged onset date of June 1, 2011 through December 31, 2012, the claimant had the residual functional capacity to perform light work activity with restrictions against frequent bending functions to include stooping or crouching and no working at unguarded heights or in hazardous areas. Furthermore, the claimant was limited during this period of time to simple and repetitive tasks that do not demand dealing with the public or performance of teamwork tasks with coworkers. However, beginning on January 1, 2013, the claimant has had the additional limitation of having an intolerable frequency of absenteeism from work which would prevent him for [sic] being able to sustain work on a regular and continuing basis.

(6) The claimant has no past relevant work . . . .

(7) Prior to the established disability onset date, the claimant was a younger individual age 18–49. The claimant's age category has not changed since the established disability onset date . . . .

(8) The claimant has at least a high school education and is able to communicate in English . . . .

(9) Transferability of job skills is not an issue in this case because the claimant does not have past relevant work . . . .

(10) Considering the claimant's age, education, work experience, and residual functional capacity from June 1, 2011, the claimant's amended alleged onset date, through December 31, 2012, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

(11) Beginning on January 1, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. This funding is based upon the framework of Medical-Vocational Rule 202.20 and Social Security Ruling 96-8p.

(12) The claimant was not disabled prior to January 1, 2013, but became disabled on that date and has continued to be disabled through the date of this decision . . . .

(13) The claimant's history of substance abuse is not a contributing factor material to a finding of disability as of January 1, 2013.

R. at 60–65 (citations omitted).

### III.   SCOPE OF JUDICIAL REVIEW

This Court's review is limited. The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The Court may only determine whether substantial evidence supports the Commissioner's findings, and whether she applied proper legal standards. The Commissioner's findings are otherwise conclusive. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*,

826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, the Court's review of the ALJ's application of legal principles is plenary. *Walker*, 826 F.2d at 999.

### IV.   ANALYSIS OF CLAIMS OF ERROR

The ALJ found Plaintiff to be disabled as of January 1, 2013 as a result of Crohn's disease, anxiety, depression, kidney stones, and other impairments. Plaintiff, however, argues that the ALJ erred in determining the onset date of Plaintiff's disability, which Plaintiff alleges was as early as June 1, 2011.[2] *See* Pl. Br. at 15. Thus, Plaintiff requests that this Court remand the matter back to the Commissioner,

---

[2] Plaintiff unsuccessfully filed for social security benefits for several years, and initially alleged an onset date of as early as December 1, 2000. R. at 77–78, 250–57. He later amended that alleged onset date, however, to June 1, 2011. R. at 275.

7

for a revised determination of the onset date of his disability. The Court agrees that the ALJ erred by failing to apply the proper legal standards in determining the onset date of Plaintiff's disability and therefore recommends that the case be remanded to the Commissioner for further proceedings on this issue.

Social Security Ruling ("SSR") 83-20[3] describes what the ALJ must consider when establishing the onset date of disability, which is the first day that the individual is disabled as defined under the applicable statute and regulations. The SSR specifically addresses disabilities of nontraumatic origin, such as the Plaintiff's Crohn's disease and other conditions, stating that "in disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, 1983 WL 31249, at *2 (Jan. 1, 1983). In some cases the onset date must be inferred:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked

---

[3] Although Social Security Rulings issued by the Commissioner of Social Security to clarify implementing regulations and agency policies do not have the force of law, reviewing courts do and should defer to the agency's interpretation of its own regulations, unless the interpretation is inconsistent with statutes or regulations. *Holohan v. Massanari*, 246 F.3d 1199, 1201 n.1 (9th Cir. 2001); *accord Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

*Id.*

The claimant bears the burden of proving the existence of a disability at any point in time. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("the claimant bears the burden of proving that he is disabled"); 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled."). However, the ALJ is required to ensure that an adequate record exists to make such a determination. *See, e.g., Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) ("the ALJ has a basic obligation to develop a full and fair record.") In cases in which the onset date must be inferred, SSR 83-20 specifically directs the ALJ to procure an opinion from a medical expert:

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20, at *3.

Thus, courts have generally interpreted SSR 83-20 to require that an ALJ obtain the opinion of a medical expert when the medical evidence is either inadequate or ambiguous as to the specific date of onset. *See, e.g., Walton v. Halter*, 243 F. 3d 703,

9

709 (3rd Cir. 2001) (medical advisor required when "[a]dequate medical records for the most relevant period were not available" and the "impairment was a slowly progressive one and the alleged onset date was far in the past"); *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997) ("[i]f the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis'"); *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("[T]he date on which the synergy [of impairments] reached disabling severity remains an enigma. In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor."); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) ("We therefore hold that in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor."); *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which

is available to make the determination."); *Lichter v. Bowen*, 814 F.2d 430, 434-436 (7th Cir. 1987) (if claimant's alleged onset date is not consistent with the other evidence and no alternative date is clear from the evidence, SSR 83-20 directs the ALJ to obtain additional medical and nonmedical evidence).

The case of *McManus v. Barnhart*, No. 5:04-CV-67-OC-GRJ, 2004 WL 3316303 (M.D. Fla. Dec. 14, 2004), is instructive. In *McManus*, the plaintiff alleged disability based on several conditions, including systemic lupus and hypertension. Interpreting SSR 83-20, the court found:

> Because the issue of onset is inextricably tied to the determination of disability in cases where the impairment is a slowly progressive condition that is not traumatic in origin, the Court concludes that the most logical interpretation of SSR 83-20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous. Accordingly, in those situations the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the slowly progressive impairment constituted a disability prior to the date last insured.

*McManus*, 2008 WL 3316303, at *6.

Here, the ALJ found Plaintiff to be disabled as of January 1, 2013 but rejected the allegation that Plaintiff was disabled between June 1, 2011 and December 31,

11

2012. R. at 61. In doing so, the ALJ did not rely on any medical advisor. Rather, the ALJ explained his decision to infer an onset date of January 1, 2013 as follows:

> [Plaintiff] worked for a few months starting in June 2011. In September 2011, he reported that Prozac had helped him, that he began to exercise and that he was working. Examination revealed that the claimant had a normal range of motion in his back and his extremities were normal with no edema. The undersigned also notes that the claimant worked for a few months in 2012 and attended Gwinnett Tech in late 2012. These activities along with the clinical findings support the above residual functional capacity concerning the period of time prior to January 1, 2013.
>
> However, it is apparent from the record that the claimant's condition has worsened over a period of time. By January 2013, the claimant's mental state and Crohn's disease were affecting the severity of each other. On top of that, the claimant subsequently experienced problems with kidney stones. Finally, the claimant testified that at his current job he was missing 1 to 2 days a week due to his health condition. Therefore, as of January 1, 2013, the claimant has had the additional limitation of having an intolerable frequency of absenteeism from work which would prevent him for being able to sustain work on a regular and continuing basis.

R. at 63–64 (internal citation omitted).

The Court cannot find that substantial evidence supports the ALJ's decision to skip a consultation with a medical advisor as to the onset date of Plaintiff's disability. First, that Plaintiff "worked for a few months" in both 2011 and 2012 does not unambiguously demonstrate the lack of a disability, at least without substantially more discussion about the evidence relating to that work. Indeed, Plaintiff testified that one of those jobs, at which he worked from approximately June 2011 through November

12

2011 at a doughnut shop, was not full-time and did not require reporting to work every day. *See* R. at 89. As to the other job, for which he worked from January 2012 through March 2012 at Panera Bread, he was terminated *for excessive bathroom use related to his Crohn's disease*. *See* R. at 85, 89. Plaintiff acknowledged that he "believed" that he would have "generally" been able to conform his bathroom breaks to a "normal" schedule in which he received at least 15-minute breaks every two hours (which apparently Panera denied). *See* R. at 86. Nevertheless, he stated that his ability to conform to such a schedule might not be consistent, and that "there may be days that would conflict with that." R. at 87.

Second, as for Plaintiff's attendance at Gwinnett Tech, the medical evidence states that Plaintiff "has had to miss school and then catch up due to crohn's disease," that he needed medical excuse letters for school, and that he complained that the stress of school deadlines was exacerbating his condition. *See* R. at 1006. The hearing testimony stated that Plaintiff could not even complete one semester at Gwinnett Tech. R. at 97. According to the testimony of Plaintiff's mother, "under stress [at Gwinnett Tech], things got worse with him at the end. In the beginning he did well, and closer to the exam he collapsed. He break down." R. at 99. Indeed, Plaintiff had to report to the ER and seek other urgent treatment for his Crohn's disease during this time,

13

specifically because of alleged worsening of the condition due to school demands. *See* R. at 1006.

Thus, Plaintiff's "few months" of working from June 2011 through December 2012, at either a part-time job or a full-time job in which he was fired for excessive bathroom breaks, and his failure to complete even one semester of studies at Gwinnett Tech, do not themselves show an ability to successfully engage in full-time work. At a minimum, the evidence relating to these activities was highly ambiguous and was not the sort of clear evidence that justified the ALJ's decision to forego consulting with a medical advisor as to the date of onset.

The ALJ's unexplained reference to "clinical findings" supporting this decision, *see* R. at 63–64, was also inadequate. The only "clinical findings" that the ALJ mentioned in the course of explaining his determination of the onset date was that "[i]n September 2011, [Plaintiff] reported that Prozac had helped him, that he began to exercise and that he was working [presumably referring to the part-time job at the doughnut shop]. Examination revealed that the claimant had a normal range of motion in his back and his extremities were normal with no edema." R. at 63. These isolated findings do not show, at least unambiguously, that Plaintiff's Crohn's disease and related mental conditions only became disabling as of 2013. To the extent the ALJ was referring conclusorily to all of the medical findings summarized throughout the

14

decision, such a vague statement does not allow for meaningful appellate review. More discussion is required to understand why the ALJ made the specific decision that the medical evidence was so clear and unambiguous as to justify foregoing the generally-required step of consulting with a medical advisor as to the onset date of disability.[4]

Thus, the ALJ appears to have picked an arbitrary onset date, without consulting a medical advisor, and on the basis of at most ambiguous medical and vocational evidence. The case should be remanded to the Commissioner for a re-evaluation of the onset date, with the benefit of advice from a medical advisor.

## V.     RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED** to the Commissioner for further action consistent with this opinion. **IT IS FURTHER RECOMMENDED** that judgment be entered in favor of Plaintiff.

**IT IS FURTHER RECOMMENDED** that, in the event that past-due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than

---

[4] In any event, nothing in the ALJ's summary of the medical evidence as a whole suggests clear and unambiguous grounds to find that Plaintiff's disability began on January 1, 2013.

thirty (30) days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty (30) days after service of the motion, and Plaintiff shall file any reply within fourteen (14) days of service of Defendant's response.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 9th day of January, 2018.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE